# IN THE UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-10140 |
| | ) | |
| CHRISTOPHER LUTZ, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION

This matter is now before the Court on Defendant Lutz's Amended Motions for Compassionate Release (Docs. 22, 25) and the Government's Response (D. 26). For the reasons set forth below, Defendant's Motions are DENIED.

### BACKGROUND

On January 31, 2013, Defendant pleaded guilty to a one-count Indictment charging him with Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and 18 U.S.C. § 2252A(b)(2). (D. 19 at 1). On June 25, 2013, Defendant was sentenced to 160 months of imprisonment. *Id.* at 2. Defendant committed the present offense only months after he was released from jail and while he was still on probation for his prior child pornography offense. (D. 15 at 4).

Defendant is currently housed at Federal Medical Center in Lexington, Kentucky (FMC Lexington). (D. 25 at 2). His projected release date is January 31, 2024. *Id.* at 5. Following his release, Defendant will be on supervised release for life. (D. 19 at 3).

On July 21, 2020, Defendant filed a request with the Warden for compassionate release and has received no response. (D. 25 at 6-7). On September 10, 2020, Defendant filed a Motion for Compassionate Release. (D. 22). The Court appointed the Federal Public Defender's Office to

1

represent him. (Text Order dated 9/14/2020). On September 18, 2020, appointed counsel filed an Amended Motion for Compassionate Release on his behalf. (D. 25). On September 23, 2020, the Government filed its Response in opposition to compassionate release. (D. 26). This Order follows.

### LEGAL STANDARD

Before filing a motion for compassionate release, a defendant is required to first request that the Bureau of Prisons (BOP) file a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

The compassionate release statute directs the Court to make three considerations: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and (3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1).

If an inmate has a chronic medical condition identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming severely ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." A chronic condition reasonably may be found to be "serious" and to "substantially diminish the ability of the defendant to provide self-care within the environment of a correctional facility." USSG § 1B1.13, cmt. n.1(A)(ii)(I).

"The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See, e.g., United States v. Melgarejo*, 2020 WL 2395982 at *5 (C.D. Ill. 2020). Rather, "a prisoner [may] satisfy the

extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6.

Finally, a court must deny a sentence reduction unless it determines that a defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2).

## DISCUSSION

### A. Exhaustion of BOP Administrative Remedies

Defendant filed a request for compassionate release with the Warden on July 21, 2020 and has not received a response. Defendant filed his *pro se* Motion on September 10, 2020. More than 30 days have passed since the Warden received his request. Therefore, the Court finds that Defendant exhausted his administrative remedies under 18 U.S.C. § 3582(c)(1)(A) before filing his Motion.

### B. Defendant's Medical Conditions

If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." A chronic condition (*i.e.*, one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. USSG § 1B1.13, cmt. n.1(A)(ii)(1).

Defendant, who is a 50-year-old Caucasian male, seeks compassionate release due to medical conditions that he claims increase his risk for severe illness if he contracts COVID-19.

(D. 25 at 3). Defendant suffers from high blood pressure, high cholesterol, cellulitis, and type 2 diabetes mellitus with diabetic neuropathy. (D. 25 at 3; D. 26 at 10). His diabetes is so severe that he has suffered amputation. (D. 25 at 4). Defendant is in remission for chronic kidney disease, stage 3 (moderate) (D. 26 at 10). Defendant is obese and has a BMI of 30. *Id.*

According to the CDC, people with type 2 diabetes mellitus, chronic kidney disease, and obesity are at an increased risk of severe illness from COVID-19, and people with high blood pressure might be at an increased risk. *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, (Oct. 16, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html. Therefore, the Court agrees with the Government and Defendant and finds that Defendant's medical and physical conditions constitute an "extraordinary and compelling reason" for release.

### C. FMC Lexington

At the time the Amended Motion and the Government's response were filed, five inmates were infected but no staff member was; eight inmates had died from COVID-19; and 206 inmates and 13 staff members had recovered. *Id.* at 3. Defendant argues that the true number of infections is almost certainly higher than documented because FMC Lexington punishes inmates for reporting symptoms and cause of death has not always been accurately reported. (D. 25 at 3). Defendant is housed with one other man but shares two bathrooms with 65 inmates. *Id.* at 4. He works for Unicore and eats with 75-100 men. *Id.* He states the facility attempted to allow inmates to socially distance by blocking off seats at each table, but he claims these measures have not been successful because inmates deemed "recovered" are becoming ill again. *Id.* The Court is aware of

the BOP's response to the pandemic and the measures it has taken to protect the health of inmates and staff. There has been one new death at FMC Lexington since Defendant filed his Amended Motion. Currently, there are two inmates who are infected and no infected staff members. *BOP: COVID-19 Update*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed October 22, 2020). If the presence of COVID-19 in a particular prison could justify compassionate release, then every inmate could obtain release. *See, e.g., United States v. Melgarejo*, 2020 WL 2395982 at *5 (C.D. Ill. 2020). The Court must also consider other factors to determine if Defendant's immediate release is warranted.

### D. Applicable 18 U.S.C. § 3553(a) Sentencing Factors and Policy Statements

Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020).

Defendant argues that he will not be a danger to the community if released because he is classified as a low risk offender in the Male Pattern Risk Scoring. (D. 22 at 18; D. 25 at 6). While in prison, he has had good conduct, availed himself of educational and vocational opportunities, worked, and even helped other inmates obtain their GED. (D. 25 at 6). In addition, at the time the Motion for Compassionate Release was filed, Defendant had served 96 months of his 160-month sentence. (D. 22 at 6).

The Government argues that though Defendant's Male Pattern Risk Scoring reflects that he is at a low risk of recidivism, his conduct shows that he is not. (D. 26 at 11). Defendant began looking at images of young girls a few months after his release for his prior child pornography

offence. *Id.* The Government also argues that his history and characteristics establish that his release would present a danger to the community. *Id.* Defendant not only looked at child pornography, but also asked others in chat rooms to take pictures of minors and send them to him and tried to enter chat rooms for teens. *Id.* His description of his rape of a young girl, whether it actually happened or only in his mind, reflects his dangerousness. *Id.*

The Court agrees with the Government that his prior history of recidivism shows a pattern of Defendant's dangerousness to the community. Defendant pleaded guilty to his first child pornography crime in 2010. (D. 26 at 2). He was sentenced to six months in jail and 30 months' probation on February 23, 2011. (D. 1 at 3). In June 2012, after he was released and while he was on supervised release, he was found using the laptop that was restricted for job-seeking purposes to view, share, and receive the child pornography. *Id.* The Court recognizes Defendant's good conduct in prison during the past eight years but, based on his history and characteristics outside of prison, the Court cannot conclude that Defendant would not be a danger if he was released.

As stated in the § 3553(a) factors, the Court must also consider whether the sentence represents the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. The statutory minimum sentence for his offence is 10 years imprisonment. (D. 15 at 4). But as of the day the Motion for Compassionate Release was filed, the Defendant has only served 96 months of his 160-month sentence. (D. 22 at 6). The time served only constitutes 60% of his total imprisonment time and is below the statutory minimum. Therefore, the Court finds that release of this Defendant would not reflect the seriousness of his child pornography offense, promote respect for the law, or provide just punishment.

**E. Defendant's Release Plan**

Defendant's release plan is also problematic. The Probation Office tried to contact his mother and learned from his aunt that his mother was recently placed in a nursing home, which will more than likely be a permanent placement. (D. 24 at 1). Defendant's aunt is not willing to allow Defendant to live with her and her husband, even temporarily. Defendant's aunt stated that their sixteen-year-old grandson visits their home daily, and they keep a smartphone, computer, laptops, and several firearms at home. *Id*. at 2. They also work about 12-hours per day. *Id*. Based on this information, the Probation Office did not find his aunt's home to be a suitable residence for Defendant. *Id*.

Without a suitable residence, Defendant will be homeless if he is released and unable to be placed in a half-way house. Defendant is suffering from multiple chronic conditions that require regular medical care and medications. Releasing Defendant without a suitable residence and medical support would be contrary to the policy under the compassionate release statute. Though Defendant proposed an alternative plan to live in a half-way house setting while he gathers funds to find his own place to live, that plan is implausible for the reasons stated above. (D. 25 at 8).

## CONCLUSION

For the reasons set forth above, Defendant's Motions for Compassionate Release [22], [25] are DENIED.

Entered this 22nd day of October, 2020.

s/ Michael M. Mihm<br>
Michael M. Mihm<br>
United States District Judge